# EXHIBIT 1

SERVED:  November 18, 2014

NTSB Order No. EA-5730

UNITED STATES OF AMERICA
**NATIONAL TRANSPORTATION SAFETY BOARD**
WASHINGTON, D.C.

Adopted by the NATIONAL TRANSPORTATION SAFETY BOARD
at its office in Washington, D.C.
on the 17th day of November, 2014

—————————————————

|  |  |
|---|---|
| MICHAEL P. HUERTA, ) | |
| Administrator, ) | |
| Federal Aviation Administration, ) | |
| ) | |
| Complainant, ) | |
| ) | Docket CP-217 |
| v. ) | |
| ) | |
| RAPHAEL PIRKER, ) | |
| ) | |
| Respondent. ) | |
| ) | |

—————————————————— )

**OPINION AND ORDER**

1.     *Background*

The Administrator of the Federal Aviation Administration (FAA) appeals the decisional

order of Administrative Law Judge Patrick G. Geraghty, issued March 6, 2014, vacating the

Administrator's order of assessment against respondent.[1]   The assessment ordered respondent to

pay a civil penalty in the amount of $10,000.00 based on a violation of 14 C.F.R. § 91.13(a) for

_____

[1] A copy of the decisional order is attached.

alleged careless or reckless operation of an unmanned aircraft.[2]  The law judge's order terminated the enforcement proceeding against respondent, and found § 91.13(a) did not apply to respondent's unmanned aircraft because the device was not an "aircraft" for purposes of the regulation.  For the following reasons, we reverse the law judge's decisional order and remand for further proceedings.

The Administrator issued an assessment order, which served as the complaint in the underlying proceeding, on June 27, 2013.  The complaint alleged respondent remotely piloted an unmanned aircraft—a Ritewing Zephyr—in a series of maneuvers around the University of Virginia (UVA) campus in Charlottesville, Virginia, on October 17, 2011.  The complaint alleged respondent operated the unmanned aircraft at altitudes ranging from the "extremely low"—10 feet above ground level (AGL)—up to 1,500 feet AGL.  In the complaint, the Administrator also asserted respondent operated the aircraft, *inter alia*, "directly towards an individual standing on a . . . sidewalk causing the individual to take immediate evasive maneuvers so as to avoid being struck by [the] aircraft"; "through a . . . tunnel containing moving vehicles"; "under a crane"; "below tree top level over a tree lined walkway"; "under an elevated pedestrian walkway"; and "within approximately 100 feet of an active heliport."  Respondent allegedly conducted these maneuvers as part of flights for compensation, as the aircraft was equipped with a camera and respondent was "being paid by [a third party] to supply aerial photographs and video of the UVA campus and medical center."

Respondent appealed the Administrator's order, and subsequently filed a motion to dismiss the complaint as a matter of law.  The Administrator contested respondent's motion, and

---

[2] Section 91.13(a) prohibits operation of "an aircraft in a careless or reckless manner so as to endanger the life or property of another."

the law judge later permitted additional pleadings from the parties.  The law judge's decisional

order granted respondent's appeal.

      B.  *Law Judge's Decisional Order*

      When respondent moved to dismiss the complaint, he argued the Federal Aviation

Regulations (FARs),[3] which govern the operation of "aircraft," did not apply to respondent's

Ritewing Zephyr.  In this regard, respondent argued the aircraft was a "model aircraft" not

subject to the regulatory provisions applicable to "aircraft."  After considering the parties'

written submissions on the motion, the law judge concluded in his decisional order the Zephyr

was a "model aircraft" to which § 91.13(a) did not apply.

      Citing the FAA's 1981 advisory circular setting forth "safety standards" for "model

aircraft" operations (AC 91-57, June 9, 1981),[4] as well as a 2007 policy notice,[5] the law judge

explained the "FAA has distinguished model aircraft as a class excluded from the regulatory and

statutory definitions [of the term 'aircraft']."  The law judge further stated, "[b]y affixing the

word 'model' to 'aircraft' the reasonable inference is that [the Administrator] intended to

distinguish and exclude model aircraft" from regulatory provisions applicable to "aircraft."[6]

Accepting the Administrator's position that respondent's Zephyr was an "aircraft" for purposes

of the FARs, the law judge reasoned, "would . . . result in the risible argument that a flight in the

---

[3] 14 C.F.R. §§ 1.1, et seq.

[4] Available at www.faa.gov/documentlibrary/media/advisory_circular/91-57.pdf.

[5] Fed. Aviation Admin., *Unmanned Aircraft Operations in the National Airspace System*, Notice 07-01, 72 Fed. Reg. 6689 (Feb. 13, 2007) (hereinafter "FAA Notice 07-01").

[6] Decisional Order at 3.

air of, *e.g.,* a paper aircraft, or a toy balsa wood glider, could subject the 'operator' to the regulatory provisions of [14 C.F.R. part 91 and] Section 91.13(a)."[7]

C.  *Issues on Appeal*

The Administrator appeals the law judge's order, and presents two main issues.  The Administrator argues the law judge erred in determining respondent's Zephyr was not an "aircraft" under 49 U.S.C. § 40102(a)(6) and 14 C.F.R. § 1.1.  The Administrator contends the law judge erred in determining respondent's aircraft was not subject to 14 C.F.R. § 91.13(a).  We reverse and remand for further proceedings consistent with this Opinion and Order.

**2.  *Decision***

We review the law judge's order *de novo.*[8]  In addition, we apply rules of construction to interpret statutes and regulations.[9]  If the language of a provision is clear and unambiguous on its face, the language controls; if the language is ambiguous, we interpret the provision in reference to, among other factors, the context in which it appears.[10]

A.  *Definition of "Aircraft"*

This case has provoked interest from a diverse set of stakeholders in the Nation's aviation system, and numerous stakeholders have submitted *amici* briefs in this case on matters ranging

---

[7] Id.

[8] Administrator v. Dustman, NTSB Order No. EA-5657 at 6 (2013) (citing Administrator v. Smith, NTSB Order No. EA-5646 at 8 (2013), Administrator v. Frohmuth and Dworak, NTSB Order No. EA-3816 at 2 n.5 (1993); Administrator v. Wolf, NTSB Order No. EA-3450 (1991); Administrator v. Schneider, 1 N.T.S.B. 1550 (1972)).

[9] See generally Exelon Generation Co., LLC v. Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO, 676 F.3d 566, 570 (7th Cir. 2012), as amended (May 9, 2012) (stating, "[t]he same rules of construction apply to administrative rules as to statutes."); see also Administrator v. Glennon and Shewbart, NTSB Order No. EA-5411 at 19-22 (2008).

[10] See Robinson v. Shell Oil Co., 519 U.S. 337, 340-41 (1997).

from principles of rulemaking and due process to First Amendment issues.  At this stage of the proceeding, however, we decline to address issues beyond the threshold question that produced the decisional order on appeal: Is respondent's unmanned aircraft system (UAS) an "aircraft" for purposes of § 91.13(a), which prohibits any "person" from "operat[ing] an aircraft in a careless or reckless manner so as to endanger the life or property of another"?[11]  We answer that question in the affirmative.

1.    *Plain Language*

The Administrator's authority to ensure aviation safety largely rests upon the Administrator's statutory responsibility to regulate the operation of "aircraft."[12]  Title 49 U.S.C. § 40102(a)(6) defines "aircraft" as "any contrivance invented, used, or designed to navigate, or fly in, the air."  Similarly, 14 C.F.R. § 1.1 defines "aircraft" for purposes of the FARs, including § 91.13, as "a device that is used or intended to be used for flight in the air."  The definitions are clear on their face.  Even if we were to accept the law judge's characterization of respondent's aircraft, allegedly used at altitudes up to 1,500 feet AGL for commercial purposes, as a "model aircraft," the definitions on their face do not exclude even a "model aircraft" from the meaning of "aircraft."  Furthermore, the definitions draw no distinction between whether a device is

---

[11] Some of the legal issues presented in *amici* briefs are not within the Board's jurisdiction. For example, we have long held that constitutional issues, such as the First Amendment issues raised by *amici* news organizations, are outside the scope of our review.  See, e.g., Garvey v. McCullough, NTSB Order No. EA-4592 at 2-3 (1997) (noting "the Board does not have the ultimate authority to rule on constitutional questions"); Hinson v. Ciampa, NTSB Order No. EA-4210 at 4 (1994).

[12] See, e.g., 49 U.S.C. §§ 40103(b)(1) ("The Administrator . . . shall . . . assign by regulation or order the use of the airspace necessary to ensure the safety of aircraft and the efficient use of airspace."), 44701 ("The Administrator of the Federal Aviation Administration shall promote safe flight of civil aircraft in air commerce by prescribing [safety regulations in various areas].").

manned or unmanned.  An aircraft is "any" "device" that is "used for flight."  We acknowledge the definitions are as broad as they are clear, but they are clear nonetheless.

Respondent points out the statutory and regulatory definitions of "aircraft" are drafted in passive voice and reflect what respondent views as an implication that an *individual* flies or navigates in the air by "using" an aircraft to do so.  Respondent argues the term "aircraft" means a device that sustains one or more individuals in flight, thus excluding unmanned aircraft from the definition.[13]  We disagree.

When Congress enacted the Federal Aviation Act of 1958 (which created the Federal Aviation Agency) and defined "aircraft" in the predecessor provision of 49 U.S.C. § 40102(a)(6),[14] so-called "drones" were largely the currency of science fiction.  Congress demonstrated prescience, however, in the early definition of "aircraft"; it expressly defined the term as any airborne contrivance "now known *or hereafter* invented, used, or designed for navigation of or flight in the air."[15]  Respondent points to the legislative history of the Act—as well as a reference in the Act to policies in furtherance of "air transportation"[16]—as evidence Congress intended the term "aircraft" to mean a manned aircraft.  However, the Act did not

---

[13] Reply Br. at 14-16.

[14] Federal Aviation Act of 1958, Pub. L. No. 85-726, § 101(5), 72 Stat. 731, 737 (1958).

[15] Id. (emphasis added).

[16] Respondent cites a provision of the Act (section 102) containing a reference to "air transportation" in the context of a declaration of national aviation policy.  Reply Br. at 15.  This section, however, applied to the regulatory functions of the Civil Aeronautics Board, which regulated the rates and routes of air carriers. [But sections 102(b) and 102(e) refer to "safety".]  The duties of the Administrator of the Federal Aviation Agency were the subject of the following section, section 103, which directed the Administrator to consider safety-related policy interests, including: "the regulation of air commerce in such manner as to best promote its development and safety" and "control of the use of the navigable airspace . . . and the regulation of both civil and military operations in such airspace."  Pub. L. No. 85-726, § 103, 72 Stat. 740.

contain such a distinction, and the definition's use of the passive voice in describing a device that is "used" for flight does not exclude unmanned aircraft.  If the operator of an unmanned aircraft is not "using" the aircraft for flight and some derivative purpose—be it aerial photography or purely recreational pleasure—there would be little point in buying such a device.  In summary, the plain language of the statutory and regulatory definitions is clear: an "aircraft" is any device used for flight in the air.

Furthermore, the statutory and regulatory definitions, as well as Advisory Circular 91-57, and FAA Notice 07-01, contain no express exclusion for unmanned or model aircraft.  Neither these definitions nor the plain text of § 91.13(a) implies model aircraft are exempt from certain requirements.  The Administrator may choose to exclude certain types of aircraft in a practical sense, by refraining from bringing a charge under the FARs against a model aircraft operator; Advisory Circular 91-57 implies such a practice, and the processes outlined in 14 C.F.R. §§ 11.81 – 11.103 provide a more formal means of seeking exemption.  However, for the case *sub judice*, the plain language of § 91.13(a), as well as the definitions quoted above, does not exclude certain categories of aircraft.  Therefore, we find the law judge erred in presuming the regulations categorically do not apply to model aircraft.  The plain language of the definitions and regulation at issue simply does not support such a conclusion.

2.    *FAA Policies Regarding Unmanned Aircraft*

In 1981, the FAA issued Advisory Circular 91-57, which "outlines, and encourages voluntary compliance with, safety standards for model aircraft operators."  The advisory circular directs such operators, for example, not to "fly model aircraft higher than 400 feet above the surface" and to take measures to keep model aircraft clear of other aircraft, "populated areas,"

7

and "noise sensitive areas."[17]  The advisory circular does not on its face exclude "model aircraft" from the ambit of 14 C.F.R. part 91.  In addition, the advisory circular neither defines "model aircraft" nor excludes "model aircraft" from the definition of "aircraft" for purposes of the FARs.

In 2007, some 26 years after issuing the advisory circular, amidst growing Congressional interest in rulemaking on unmanned aircraft[18] and growing public interest in the subject of UASs generally, the FAA issued Notice 07-01.  The notice clarified the FAA's requirements regarding unmanned aircraft operations.  However, as explained below, the notice does not dispose of the issue in this case, which is whether § 91.13(a) applies to unmanned aircraft operations.

B.    *Applicability of § 91.13(a) to Respondent's Aircraft*

Turning to the issue of the Administrator's interpretation that § 91.13(a) applies to unmanned aircraft, we find the interpretation is reasonable.  The Supreme Court has stated an agency may articulate an interpretation of a regulation via the adjudicative process.[19]  Courts have deferred to such interpretations as long as the interpretation is grounded in a reasonable reading of the regulation's text and purpose.[20]  Furthermore, even when the interpretation is

---

[17] Id. at ¶ 3.

[18] See, e.g., Federal Aviation Administration Reauthorization Act of 2007, H.R. 2881, title III, subtitle B (110th Cong. 2007) (House-passed FAA reauthorization that was not enacted but would have required rulemaking on, *inter alia,* integration into the National Airspace System of commercial unmanned aircraft and development of requirements for integration of small unmanned aircraft).

[19] NLRB v. Bell Aerospace Co., 416 U.S. 267, 294-95 (1974); cf. Morton v. Ruiz, 415 U.S. 199, 232 (1974) (cautioning agencies "to avoid the inherently arbitrary nature of unpublished ad hoc determinations"); see also AKM LLC v. Sec'y of Labor, 675 F.3d 752, 754 (D.C. Cir. 2012) (citing Martin v. OSHRC, 499 U.S. 144 (1991), and stating the Chevron standard supplying deference to the agency's interpretation applies, "even if the [agency's] interpretation arises in an administrative adjudication rather than in a formal rulemaking process").

[20] Otis Elevator Co. v. Sec'y of Labor, --- F.3d ----, 2014 WL 3973148 (D.C. Cir. 2014); see also Taylor v. Huerta, 723 F.3d 210 (D.C. Cir. 2013) (stating, "[n]or is it uncommon for an

novel, courts will defer to it, as long as an agency "adequately explains the reasons for a reversal of policy."[21]

As stated above, in the case *sub judice*, the Administrator's application of § 91.13(a) to respondent's aircraft is reasonable.  Section 91.13(a) states, "*Aircraft operations for the purpose of air navigation*. No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."  As discussed above, neither the plain language of § 91.13(a) nor the definitions of "aircraft" applicable to regulations in 14 C.F.R. part 91 exclude unmanned aircraft.  The Administrator's interpretation of this text—that it applies to respondent's operation of his Zephyr to prohibit careless or reckless operations—is reasonable, given the broad language of the section.  In addition, the Administrator's preamble text in its Notices of Proposed Rulemaking, published in the *Federal Register* under the Administrative Procedure Act for promulgation of § 91.13(a), do not contain any language indicating its application of § 91.13(a) to respondent's aircraft is an unreasonable reading of the regulation's text and purpose.[22]  The Board has affirmed the Administrator's application of § 91.13(a) as an alleged independent violation in other cases in which, presumably, no other regulation would have explicitly prohibited the alleged conduct.[23]

---

(..continued)
adjudicative body to defer to the reasonable legal interpretations of an agency clothed with enforcement and rulemaking powers").

[21] National Cable & Telecommunications Ass'n v. Brand X Internet Serv.. 545 U.S. 967, 981 (2005).

[22]  50 Fed. Reg. 11292 (Mar. 20, 1985); 46 Fed. Reg. 45256 (Sept. 10, 1981).

[23] See, e.g..  Administrator v. Nickl, NTSB Order No. EA-5287 (2007); see generally Administrator v. Hollabaugh, NTSB Order No. EA-5609 (2011).

Moreover, the Administrator's position that respondent's Zephyr is an "aircraft" is consistent with the Administrator's regulations at 14 C.F.R. part 101, promulgated in part on authority of some of the same statutory provisions underlying § 91.13(a),[24] which imposes specific operating limitations with respect to unmanned free balloons, kites, rockets, and moored balloons that rise or travel above the surface of the earth.  The language of 14 C.F.R. § 91.1(a) specifically excludes these aircraft, as well as ultralights, from the requirements of part 91. Instead, 14 C.F.R. parts 101 and 103 contain regulations governing those types of aircraft. Though they are subject to special operating rules, the unmanned devices covered under part 101 nonetheless are "aircraft."  The regulations contain no text suggesting the Administrator considers those devices to be something other than "aircraft"; in fact, § 91.1(a), in excluding the devices from the ambit of part 91, specifically refers to the devices as a subset of the term "aircraft."[25]  The Administrator's position in this matter that respondent's unmanned aircraft is an "aircraft," to which § 91.13(a) applies, comports with the regulatory approach contained in part 101.

Respondent and some *amici* challenge the Administrator's position as based on a "new" interpretation of 14 C.F.R. §§ 1.1 and 91.13(a) that conflicts with prior agency practice and policy and thus, does not warrant deference.  In particular, respondent cites a 2001 internal memorandum by a manager within the FAA's Air Traffic Organization advising the FARs do not

---

[24] See note 12, supra; 49 U.S.C. §§ 40103 and 44701.

[25] 14 C.F.R. § 91.1(a) states, "this part prescribes rules governing the operation of aircraft (other than moored balloons, kites, unmanned rockets, and unmanned free balloons, which are governed by part 101 of this chapter, and ultralight vehicles operated in accordance with part 103 of this chapter) within the United States . . . ."

apply to "[m]odel aircraft."[26]  In addition, respondent relies on a letter attached as Exhibit L to

his reply brief, which appears to be the FAA's position in response to the request that precipitated

the aforementioned memorandum in Exhibit K.  The letter in Exhibit L makes no mention of

whether § 91.13(a) applies to unmanned aircraft.  Respondent also cites a letter by the then-

director of the FAA's Flight Standards Division advising a Member of Congress: "a more

stringent regulatory approach [than the advisory circular] was necessary" to address increasing

unmanned aircraft operations.[27]  However, this document, like the others, does not state

§ 91.13(a) only applies to manned aircraft.

Nothing in Advisory Circular 91-57, on its face, reflects any intent on the part of the FAA

to exempt operators of unmanned or "model aircraft" from the prohibition on careless or reckless

operation in § 91.13(a).  At most, we discern in the advisory circular a recognition on the

Administrator's part that certain provisions of the FARs may not be logically applicable to model

aircraft flown for recreational purposes.  But nothing in the text of the document disclaims,

implicitly or explicitly, the Administrator's interest in regulating operations of model aircraft that

pose a safety hazard.  More importantly, the advisory circular puts the reasonable reader on

notice of the Administrator's intent to ensure the safe operation of model aircraft by appropriate

means.

---

[26] Resp. Br. at 11; Resp. Br. Exh. K.  This internal memorandum does not appear to have been
distributed to the public at large as official FAA guidance on the subject of unmanned aircraft
operations.  It appears to have been written by an Air Traffic Organization manager who is not an
official of the Flight Standards division with formal responsibility for prosecuting enforcement
proceedings under the FARs.

[27] Resp. Br. at 11-12; Resp. Br. Exh. M.

C.    *Conclusion*

This case calls upon us to ascertain a clear, reasonable definition of "aircraft" for purposes of the prohibition on careless and reckless operation in 14 C.F.R. § 91.13(a).  We must look no further than the clear, unambiguous plain language of 49 U.S.C. § 40102(a)(6) and 14 C.F.R. § 1.1: an "aircraft" is any "device" "used for flight in the air."  This definition includes any aircraft, manned or unmanned, large or small.  The prohibition on careless and reckless operation in § 91.13(a) applies with respect to the operation of any "aircraft" other than those subject to parts 101 and 103.  We therefore remand to the law judge for a full factual hearing to determine whether respondent operated the aircraft "in a careless or reckless manner so as to endanger the life or property of another," contrary to § 91.13(a).

**ACCORDINGLY, IT IS ORDERED THAT:**

1.  The Administrator's appeal is granted;

2.  The law judge's decisional order is reversed; and

3. The case is remanded to the law judge for further proceedings consistent with this Opinion and Order.

HART, Acting Chairman, and SUMWALT, ROSEKIND, and WEENER, Members of the Board, concurred in the above opinion and order.

Served:  March 6, 2014

## UNITED STATES OF AMERICA
## NATIONAL TRANSPORTATION SAFETY BOARD
## OFFICE OF ADMINISTRATIVE LAW JUDGES

```
* * * * * * * * * * * * * * * * * * * * * * * *
MICHAEL P. HUERTA,                           *
ADMINISTRATOR,                               *
FEDERAL AVIATION ADMINISTRATION,             *
                                             *
                       Complainant,          *
                                             *            Docket CP-217
    v.                                       *
                                             *
                                             *
RAPHAEL PIRKER,                              *
                                             *
                       Respondent.           *
                                             *
* * * * * * * * * * * * * * * * * * * * * * * *
```

**SERVICE:**

Brendan M. Schulman, Esq.            Brendan A. Kelly, Esq.
Kramer, Levin, Naftalis & Frankel, LLP   Office of the Regional Counsel
117 Avenue of the Americas           FAA Eastern Region
New York, NY  10036                  1 Aviation Plaza
(Certified Mail and FAX)             Jamaica, NY  11434
                                     (FAX)

## DECISIONAL ORDER

This matter is before the Board upon the Appeal of Raphael Pirker (herein Respondent), from an Order of Assessment, which seeks to assess Respondent a civil penalty in the sum of $10,000.00 U.S. dollars.  The Order was issued against Respondent by the Administrator, Federal Aviation Administration (FAA), herein Complainant, and that Order, as provided by Board Rule, serves as the Complaint in this action.

The Complaint is comprised of eleven Numbered Paragraphs of allegations.[1]   In the first paragraph, it is alleged that Respondent acted on or about October 17, 2011, as pilot in command of "a Ritewing Zephyr powered glider aircraft in the vicinity of the University of Virginia (UVA) Charlottesville, Virginia…"  The next allegation Paragraph avers that that aircraft, "…is an Unmanned Aircraft System (UAS)…"[2]  It is further alleged that Respondent's flight operation was for compensation, in that payment was received for video and photographs taken during that flight. As a consequence of those allegations, and the remaining factual allegations set forth in the Complaint, it is charged that Respondent acted in violation of the provisions of Part 91, Section 91.13(a), Federal Aviation Regulations (FARs).[3]

Respondent has filed a Motion to Dismiss, seeking dismissal upon the assertion that the Complaint is subject to dismissal, as a matter of law, in the absence of a valid rule for application of FAR regulatory authority over model aircraft flight operations.

Complainant has submitted a Response[4] in opposition, arguing that the Complaint is not deficient in that, as the non-moving Party, the allegations of the Complaint must be assumed true, and the Complaint evaluated in manner most favorable to Complainant.  This argument is premature.  Respondent's Motion does not challenge the sufficiency of the Complaint, and stipulates therein that, solely for purposes of his Motion, the Complaint's allegations are to be assumed as true.  Any dispute and argument as to the efficacy of the Complaint must be deferred, pending resolution of the threshold issue of Complainant's authority to exercise FAR regulatory action over model aircraft operations.

14 C.F.R. Part 1, Section 1.1 states as the FAR definition of the term "Aircraft" a "…device that is used or intended to be used for flight in the air…"  And Part 91, Section 91.1 states that Part, "…prescribes rules governing operation of aircraft…"  Premised upon those FAR provisions and

---

[1] See Attachment 1, Order of Assessment, for a full statement of the allegations.
[2] See Attachment 2 Specifications:  Ritewing Zephyr 11.
[3] Part 91, Section 91.13(a) provides:  No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.
[4] The Parties were granted leave to file supplemental Briefs, and all submissions have been considered.

those of 49 U.S.C. Section 40102(a)(6)[5], Complainant argues that Respondent was operating a device or contrivance designed for flight in the air and, therefore, subject to Complainant's regulatory authority.  The term, "contrivance" is used in the 49 U.S.C. Section 40102(a)(6) definition, "aircraft", whereas Part 1, Section 1.1, defines an "aircraft" as a "device"; however, the terms are basically synonymous, as both refer to an apparatus intended or used for flight.[6]

It is argued by Complainant that, under either definition of the term "aircraft", the definition includes within its scope a model aircraft.  That argument is, however, contradicted in that Complainant FAA has, heretofore, discriminated in his interpretation/application of those definitions.

Complainant has, historically, in their policy notices, modified the term "aircraft" by prefixing the word "model", to distinguish the device/contrivance being considered.  By affixing the word "model" to "aircraft" the reasonable inference is that Complainant FAA intended to distinguish and exclude model aircraft from either or both of the aforesaid definitions of "aircraft".

To accept Complainant's interpretive argument would lead to a conclusion that those definitions include as an aircraft all types of devices/contrivances intended for, or used for, flight in the air.  The extension of that conclusion would then result in the risible argument that a flight in the air of, e.g., a paper aircraft, or a toy balsa wood glider, could subject the "operator" to the regulatory provisions of FAA Part 91, Section 91.13(a).

Complainant's contention that a model aircraft is an "aircraft", as defined in either the statutory or regulatory definition, is diminished on observation that FAA historically has not required model aircraft operators to comply with requirements of FAR Part 21, Section 21.171 et seq and FAR Part 47, Section 47.3, which require Airworthiness and Registration Certification for an aircraft.  The reasonable inference is not that FAA has overlooked the requirements, but, rather that FAA has distinguished model aircraft as a class excluded from the regulatory and statutory definitions.

---

[5] 49 U.S.C. Section 40102(a)(6):  Aircraft means any contrivance invented, used, or designed to navigate or fly in the air.
[6] Webster's New Dictionary of Synonyms, "contrivance" at 188; "device" at 236.  Roget's Thesaurus 4th Ed. At 348.1.

3

While Complainant states in his Sur-Reply Brief that he is not seeking herein to enforce FAA Policy Statements/Notices concerning model aircraft operation, a consideration of those policy notices is informative.[7]

Complainant FAA issued Advisory Circular (AC) AC 91-57, entitled "Model Aircraft Operating Standards", stating the purpose as "...encouraging voluntary compliance with safety standards for model aircraft operators..."[8] That Complainant FAA issued an AC urging model aircraft operators to voluntarily comply with the therein stated "Safety Standards"[9] is incompatible with the argument that model aircraft operators, by application of the statutory and regulatory definition, "aircraft" were simultaneously subject to mandatory compliance with the FARs and subject to FAR regulatory enforcement.

That FAA has not deemed every device used for flight in the air to be within the FAR Part 1, Section 1.1 definition, and thus subject to provisions of Part 91 FARs, is illustrated on consideration of the FAA regulatory treatment of Ultralights.

An Ultralight, a device used for flight in the air, is nevertheless governed by the provisions of Part 103 FARs, and whereupon meeting the criteria stated in Section 103.1 is defined, not as an "aircraft", but as an "Ultralight Vehicle", subject only to the particular regulatory provisions of Part 103, FARs.

It is concluded that, as Complainant: has not issued an enforceable FAR regulatory rule governing model aircraft operation; has historically exempted model aircraft from the statutory FAR definitions of "aircraft" by relegating model aircraft operations to voluntary compliance with the guidance expressed in AC 91-57, Respondent's model aircraft operation was not subject to FAR regulation and enforcement.

As previously noted, Complainant has disclaimed that, in this litigation, he is seeking to enforce FAA UAS policy; however, the Complaint asserts that the "aircraft" being operated by Respondent "is an Unmanned Aircraft System (UAS)". Since the classification UAS does not appear in the FARs, it is necessary to examine the FAA policy for the existence of a rule imposing regulatory authority concerning UAS operations.

---

[7] FAA Policy Notices are addressed subsequently.
[8] Attachment 3, Advisory Circular, AC 91-57, June 9, 1981.
[9] Id. at Paragraph 3.

FAA issued on September 16, 2005, Memorandum AFS-400 UAS Policy 05-01 (Policy 05-01)[10], which was subsequently cancelled, revised, and re-issued on March 13, 2008, as Interim Operational Approval Guidance 08-01 (Guidance 08-01).[11]  The stated purpose of those Memoranda was to issue guidance, not to the general public, but, rather as internal guidance to be used by the appropriate FAA personnel.[12]  Significantly, both Memoranda specifically eschew any regulatory authority of the expressed policy, stating respectively that, "this policy is not meant as a substitute for any regulatory process…"[13]

As policy statements of an agency are not – aside from the fact that the guidance policy therein expressed is stated as for internal FAA use – binding upon the general public[14], and as any regulatory effect is disclaimed, these Policy Memoranda cannot be, and are not, found as establishing a valid rule for classifying a model aircraft as an UAS, or as furnishing basis for assertion of FAR regulatory authority vis á vis model aircraft operations.

On February 13, 2007, FAA Notice 07-01 was published in the Federal Register with the stated purpose/action of serving as "Notice of Policy; opportunity for feedback…"[15]  Under the Section captioned "Policy Statement", it is stated that for an UAS to operate in the National Airspace System (NAS), specific authority is required, and that, pertinent here, for civil aircraft that authority is a special airworthiness certificate.  It excludes from that requirement "modelers" – recreational/sport users – and the operational safety authority is iterated as AC 91-57.  It further provides that when the model aircraft is used for "business purposes"[16] – AC 91-57 is not applicable, as by such use the model aircraft is deemed an UAS, requiring special airworthiness

---

[10] Title:  Unmanned Aircraft Systems Operations in the U.S. National Airspace System – Interim Operational Approval Guidance.
[11] Title:  Unmanned Aircraft Systems Operations in the U.S. National Airspace System.
[12] Policy 05-01 at 1; Guidance 08-01 at 2.
[13] Policy 05-01 at 1; Guidance 08-01 at 2,3.
[14] Syncor Int'l Corp. v. Shalala, 56F.3d 592, 595 (5th Cir. 1995).
[15] 72 Fed. Reg. 6689 (2007).
[16] Id at 6690 (2007), Policy Statement "business" is not defined, so it is unclear if the term is limited to ongoing enterprises held out to the general public, or if it includes a one-time operation for any form or amount of compensation.

certification.[17]  In my view, the iteration of the authority of AC 91-57, even though restricted here, undercuts the contention that model aircraft were considered an aircraft as defined in the FARs, or the Code, and subject to Part 91 FAR regulation.

Notice 07-01 expressly states that its action/purpose is to set forth the current FAA policy for UAS operations, and the requirements are stated, as noted above, under the Section captioned "Policy Statement".  As self-defined as a statement of policy, it cannot be considered as establishing a rule or enforceable regulation, since, as discussed supra, policy statements are not binding on the general public.

As Notice 07-01 was published in the Federal Register, even though stated as a "Notice of Policy", it could be argued that it could be considered as legislative rulemaking purporting to set out new, mandatory requirements/limitations requiring public compliance.

Notice 07-01 does not, however, meet the criteria for valid legislative rulemaking, as it was not issued as a Notice of Proposed Rulemaking (NPRM), and if intended to establish a substantive rule, it did not satisfy the requirements of 5 U.S.C., Section 553(d), which requires publication of notice not less than 30 days before the effective date.[18]  As it is shown as being issued on February 6, 2007, and published as a Notice of Policy February 13, 2007, it fails this requirement.

It is significant that upon comparison of the allegations in the Complaint with the statements put forward in the Policy Statement Section of Notice 07-01, that the allegations made in Complaint Paragraphs 2, 5, and 6, mirror the Policy Notice provisions.  That fact contradicts Complainant's assertion that Policy Notice 07-01 plays no part in this litigation.  Those allegations are also found as being inconsistent with the assertion that model aircraft were always included in the FAR Part 1, Section 1.1 definition, and thus subject to Part 91 FAR regulation.  If so, it was unnecessary to allege – as in Paragraphs 5 and 6 – flight for compensation/payment which appears to be for the purpose of re-classifying Respondent's model aircraft as an UAS within the terminology of Notice 07-01.[19]

---

[17] 72 Fed. Reg. 6690 (2007).
[18] 5 U.S.C. Section 553 - Rulemaking.  The exceptions stated in Section 553(d) are not applicable, particularly Exception (2), in that Notice 07-01 does not interpret an existing rule or policy statement - it is a statement of current policy.
[19] On Complainant's theory, Respondent could be charged directly as operating an "aircraft" contrary to the provisions of Section

Congress enacted the FAA Modernization Re-authorization and Reform Act of 2012 (2012 Act), and therein addressed in Subtitle B, Unmanned Aircraft Systems.[20] This legislation postdates the events at issue herein; however, the language of provisions of the 2012 Act is instructive.

The 2012 Act requires FAA, through the Secretary of Transportation, to develop a plan for integration of civil UAS into the NAS, specifying that the plan contain recommendations for rulemaking to define acceptable standards for operation and certification of civil UAS.[21] The 2012 Act further, in the Subsection Rulemaking, specifies a date for publication of "(1) a final rule on small UAS…" to permit their operation in the NAS.[22] The 2012 Act also contains a provision stating that the Administrator, FAA, "…may not promulgate any rule or regulation regarding a model aircraft…", where the model aircraft satisfies the criteria stated therein.[23] It is a reasonable inference that this language shows that, at the time of enactment of the 2012 Act, the legislators were of the view there were no effective rules or regulations regulating model aircraft operation, elsewise, rather than calling for enactment of such, the 2012 Act would have called for action to repeal, amend, or modify the existing rules or regulations, and not require a date for issuance of a final rule.

I find that:

1.   Neither the Part 1, Section 1.1, or the 49 U.S.C. Section 40102(a)(6) definitions of "aircraft" are applicable to, or include a model aircraft within their respective definition.[24]

2.   Model aircraft operation by Respondent was subject only to the FAA's requested voluntary compliance with the Safety Guidelines stated in AC 91-57.

---

91.13(a). Compensation/payment could arguably then be a factor for resolving: careless or reckless operation; appropriate sanction/severity of a civil penalty.
[20] Public Law 112-95, 126 Stat. 72 (February 14, 2012).
[21] Id at Section 332(a)(1)(2)(1)(b)(i).
[22] Id at Section 332(b), Rulemaking.
[23] Id at Section 332(a).
[24] Accepting Complainant's overreaching interpretation of the definition "aircraft", would result reductio ad obsurdum in assertion of FAR regulatory authority over any device/object used or capable of flight in the air, regardless of method of propulsion or duration of flight.

7

3. As Policy Notices 05-01 and 08-01 were issued and intended for internal guidance for FAA personnel, they are not a jurisdictional basis for asserting Part 91 FAR enforcement authority on model aircraft operations.

4. Policy Notice 07-01 does not establish a jurisdictional basis for asserting Part 91, Section 91.13(a) enforcement on Respondent's model aircraft operation, as the Notice is either (a) as it states, a Policy Notice/Statement and hence non-binding, or (b) an invalid attempt of legislative rulemaking, which fails for non-compliance with the requirement of 5 U.S.C. Section 553, Rulemaking.

5. Specifically, that at the time of Respondent's model aircraft operation, as alleged herein, there was no enforceable FAA rule or FAR Regulation applicable to model aircraft or for classifying model aircraft as an UAS.[25]

Upon the findings and conclusions reached, I hold that Respondent's Motion to Dismiss must be **AFFIRMED**.

IT IS ORDERED THAT:

1. Respondent's Motion to Dismiss be, and hereby is: **GRANTED**.

2. Complainant's Order of Assessment be, and hereby is: **VACATED AND SET ASIDE**.

3. This proceeding be, and is: **TERMINATED WITH PREJUDICE**.[26]

ENTERED this 6th day of March, 2014, at Denver, Colorado.

_____
PATRICK G. GERAGHTY
JUDGE

---

[25] On the FAA's decades long holding out to model aircraft operators/public that the only FAA policy regarding model aircraft operations was the requested voluntary compliance with the Safety Guidelines of AC 91-57, it would likely require for assertion of a Rule or FAR authority concerning model aircraft operations, for the FAA to undertake rulemaking as required by 5 U.S.C. Section 553 Rulemaking. Alaska Professional Hunters Association, Inc. v. Federal Aviation Administration, 177 F.3d 1030 (D.C. Cir. 1999), Shell Offshore, Inc. v. Babbitt, 238 F.3d 622 (5th Cir. 2001).

[26] In light of the decision reached herein, other issues raised, and argument made need not be, and are not, addressed.

## APPEAL (DISPOSITIONAL ORDER)

Any party to this proceeding may appeal this order by filing a written notice of appeal within <u>10 days</u> after the date on which it was served (the service date appears on the first page of this order).  <u>An original and 3 copies of the notice of appeal</u> must be filed with the:

National Transportation Safety Board
Office of Administrative Law Judges
490 L'Enfant Plaza East, S.W.
Washington D.C. 20594
Telephone: (202) 314-6150 or (800) 854-8758

That party <u>must also perfect the appeal</u> by filing a <u>brief</u> in support of the appeal within <u>30 days</u> after the date of service of this order.  <u>An original and one copy of the brief</u> must be filed <u>directly</u> with the:

National Transportation Safety Board
Office of General Counsel
Room 6401
490 L'Enfant Plaza East, S.W.
Washington, D.C. 20594
Telephone: (202) 314-6080
FAX: (202) 314-6090

The Board may <u>dismiss</u> appeals on its own motion, or the motion of another party, when a party who has filed a notice of appeal fails to perfect the appeal by filing a timely appeal brief.

A brief in reply to the appeal brief <u>may</u> be filed by any other party within <u>30 days</u> after that party was served with the appeal brief.  <u>An original and one copy of the reply brief</u> must be filed <u>directly</u> with the Office of General Counsel in Room 6401.

<u>NOTE</u>: Copies of the notice of appeal and briefs <u>must</u> also be served on all other parties to this proceeding.

An original and one copy of all papers, including motions and replies, submitted thereafter should be filed <u>directly</u> with the Office of General Counsel in Room 6401. Copies of such documents <u>must</u> also be served on the other parties.

The Board directs your attention to Rules 7, 43, 47, 48 and 49 of its Rules of Practice in Air Safety Proceedings (codified at 49 C.F.R. §§ 821.7, 821.43, 821.47, 821.48 and 821.49) for further information regarding appeals.

**ABSENT A SHOWING OF GOOD CAUSE, THE BOARD WILL NOT ACCEPT LATE APPEALS OR APPEAL BRIEFS.**

# ATTACHMENT 1



U.S. Department
of Transportation

**Federal Aviation
Administration**

Eastern Region
Regional Counsel
Telephone: 718 553-3269
Facsimile: (718) 995-5699

1 Aviation Plaza
Jamaica, NY 11434

JUN 2 7 2013

**FEDERAL EXPRESS, REGISTERED MAIL - RETURN RECEIPT REQUESTED, AND
ELECTRONIC MAIL**
Raphael Pirker
Melchutistrasse 47
8304 Zurich
Switzerland

### Docket No. 2012EA210009

### ORDER OF ASSESSMENT

On April 13, 2012, you were advised through a Notice of Proposed Assessment that the FAA
proposed to assess a civil penalty in the amount of $10,000.

After consideration of all the available information, it appears that:

1.  On or about October 17, 2011, you were the pilot in command of a Ritewing Zephyr
    powered glider aircraft in the vicinity of the University of Virginia (UVA), Charlottesville,
    Virginia.

2.  The aircraft referenced above is an Unmanned Aircraft System (UAS).

3.  At all times relevant herein you did not possess a Federal Aviation Administration pilot
    certificate.

4.  The aircraft referenced above contained a camera mounted on the aircraft which sent real
    time video to you on the ground.

5.  You operated the flight referenced above for compensation.

6.  Specifically, you were being paid by Lewis Communications to supply aerial photographs
    and video of the UVA campus and medical center.

7.  You deliberately operated the above-described aircraft at extremely low altitudes over
    vehicles, buildings, people, streets, and structures.

8. Specifically, you operated the above-described aircraft at altitudes of approximately 10 feet to approximately 400 feet over the University of Virginia in a careless or reckless manner so as to endanger the life or property of another.

9. Fox example, you deliberately operated the above-described aircraft in the following manner:

    a. You operated the aircraft directly towards an individual standing on a UVA sidewalk causing the individual to take immediate evasive maneuvers so as to avoid being struck by your aircraft.

    b. You operated the aircraft through a UVA tunnel containing moving vehicles.

    c. You operated the aircraft under a crane.

    d. You operated the aircraft below tree top level over a tree lined walkway.

    e. You operated the aircraft within approximately 15 feet of a UVA statue.

    f. You operated the aircraft within approximately 50 feet of railway tracks.

    g. You operated the aircraft within approximately 50 feet of numerous individuals.

    h. You operated the aircraft within approximately 20 feet of a UVA active street containing numerous pedestrians and cars.

    i. You operated the aircraft within approximately 25 feet of numerous UVA buildings.

    j. You operated the aircraft on at least three occasions under an elevated pedestrian walkway and above an active street.

    k. You operated the aircraft directly towards a two story UVA building below rooftop level and made an abrupt climb in order to avoid hitting the building.

    l. You operated the aircraft within approximately 100 feet of an active heliport at UVA.

10. Additionally, in a careless or reckless manner so as to endanger the life or property of another, you operated the above-described aircraft at altitudes between 10 and 1500 feet AGL when you failed to take precautions to prevent collision hazards with other aircraft that may have been flying within the vicinity of your aircraft.

11. By reason of the above, you operated an aircraft in a careless or reckless manner so as to endanger the life or property of another.

By reason of the foregoing, you violated the following section(s) of the Federal Aviation Regulations:

    a.      Section 91.13(a), which states that no person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.

NOW THEREFORE, IT IS ORDERED, pursuant to 49 U.S.C. §§46301(a)(1) and (d)(2) and 46301(a)(5), that you be and hereby are assessed a civil penalty in the amount of $10,000.

You may pay the penalty amount by submitting a certified check or money order payable to the "Federal Aviation Administration" to the Office of Accounting, 1 Aviation Plaza, Jamaica, NY 11434. **In the alternative, you may pay your civil penalty with a credit card over the Internet. To pay electronically, visit the web site at http://div.dot.gov/fea.htm and click on "Civil Fines and Penalty Payments" which will bring you to the "FAA Civil Penalty Payments Eastern Region" page. You must then complete the requested information and click "submit" to pay by credit card.**

# ATTACHMENT 2



Specifications

MODEL: Zephry II

MANUFACTURER: RiteWingRC (ritewingrc.com)

DISTRIBUTOR: RiteWingRC

TYPE: electric flying wing

SMALLEST FLYING AREA: football field

IDEAL FOR: intermediate or advanced

WINGSPAN: 56 in.

WING AREA: 770 sq. in.

READY-TO-FLY WEIGHT:  4lbs 7oz

WING LOADING: 16 oz sq.ft

PRICE: $130.00

CENTER-OF-GRAVITY: 9 3/8" back from nose

GEAR USED

Radio: Spektrum DX8, Orange rx, (2) RiteWingRC metal gear servos-elevons

Motor: RiteWingRC 1200kv, 65amp ESC (ritewingrc.com), Turnigy 5amp  26v BEC (hobbyking.com)

# ATTACHMENT 3

**AC**   91-57

**DATE**   June 9, 1981

# ADVISORY   CIRCULAR



DEPARTMENT OF TRANSPORTATION
Federal Aviation Administration
Washington, D.C.

*Subject:*   MODEL AIRCRAFT OPERATING STANDARDS

1. <u>PURPOSE</u>. This advisory circular outlines, and encourages voluntary compliance with, safety standards for model aircraft operators.

2. <u>BACKGROUND</u>. Modelers, generally, are concerned about safety and do exercise good judgement when flying model aircraft. However, model aircraft can at times pose a hazard to full-scale aircraft in flight and to persons and property on the surface. Compliance with the following standards will help reduce the potential for that hazard and create a good neighbor environment with affected communities and airspace users.

3. <u>OPERATING STANDARDS</u>.

   a. Select an operating site that is of sufficient distance from populated areas. The selected site should be away from noise sensitive areas such as parks, schools, hospitals, churches, etc.

   b. Do not operate model aircraft in the presence of spectators until the aircraft is successfully flight tested and proven airworthy.

   c. Do not fly model aircraft higher than 400 feet above the surface. When flying aircraft within 3 miles of an airport, notify the airport operator, or when an air traffic facility is located at the airport, notify the control tower, or flight service station.

   d. Give right of way to, and avoid flying in the proximity of, full-scale aircraft. Use observers to help if possible.

   e. Do not hesitate to ask for assistance from any airport traffic control tower or flight service station concerning compliance with these standards.

R. J. VAN VUREN
Director, Air Traffic Service

Initiated by:   AAT-220